United States District Court
Southern District of Texas
**ENTERED**
September 29, 2023 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SAMUEL LEE JONES, JR., | § | |
| TDCJ # 01787475, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-3638 |
| | § | |
| BOBBY LUMPKIN, *et al.*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Samuel Lee Jones, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), proceeds *pro se* and *in forma pauperis* in this civil rights case. The three served defendants have filed a motion to dismiss all claims against them (Dkt. 35) and the plaintiff filed a response (Dkt. 38). The motion is ripe for decision. The plaintiff also has filed a motion to amend the Court's prior order (Dkt. 33) and two motions to amend his complaint (Dkt. 34; Dkt. 36). Having reviewed the pleadings, the motions and briefing, the applicable authorities, and all matters of record, the defendants' motion to dismiss will be **granted in part** and **denied in part**. The plaintiff's motions will be **granted** insofar as he seeks leave to substitute Margaret Mubuge for Jane Doe and otherwise **denied**. The Court's reasons are explained below.

## I.    BACKGROUND

At all relevant times, Jones was assigned to the Wynne Unit. He brings claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*

1 / 28

(RLUIPA), the First Amendment, and the Fourth Amendment.  On July 26, 2022, the Court ordered an answer from Bobby Lumpkin, the director of TDCJ; Margarita Thomas, the mail room supervisor at the Wynne Unit; and Officer Stanley Iwundi at the Wynne Unit (Dkt. 21).[1]  Jones alleges that (1) Lumpkin is liable for delayed deliveries to Jones of a religious publication; (2) Thomas improperly handled Jones' mail; and (3) Iwundi conducted an unconstitutional body cavity search on Jones.  His allegations against each of the three defendants are set out below.

First, Jones alleges that Lumpkin violated his rights in connection with his receipt of Final Call News (FCN), a religious publication that Jones describes as a paper of the Nation of Islam.  His claims against Lumpkin are based on TDCJ's correspondence policy, BP-03.91, which TDCJ amended in 2021.  *See* TDCJ's Uniform Inmate Correspondence Rules, BP-03.91 (rev. 5) (June 25, 2021), available at https://www.tdcj.texas.gov/ documents/policy/BP0391.pdf (last visited June 13, 2023) (BP-03.91).  As amended, BP-03.91 provides that, before correspondence or publications addressed to inmates are delivered to the recipient, the items "are subject to inspection by the [Mail System Coordinators Panel (MSCP)] and by unit staff" (*id.* at 11).[2]  The MSCP has "the authority

---

[1]     On July 22, 2022, the Court dismissed Jones' claims against Patrick Coleman regarding the administrative grievance process (Dkt. 20).  The Court also dismissed Jones' property claims against Defendants Jane Doe, Sharon Rowe-Phillips, Miriam Gitau, but later granted reconsideration under Rule 54(b) and withdrew the dismissal of the property claims (Dkt. 29).  The Court has not ordered an answer from Rowe-Phillips, Gitau, or Jane Doe.

[2]     The policy defines the MSCP as "the body designated to assist in the maintenance and coordination of the Uniform Inmate Mail System," and states that it "serves to bring uniformity to the decisions of the various units by providing technical assistance and rule interpretation; serves as the centralized authority for the review of publications for initial unit acceptance or denial;

to accept or reject a publication for content, subject to review by the [Director's Review Committee (DRC)]" (*id.* at 11).[3]  Under the policy, officials must inspect publications addressed to inmates within two weeks of receipt at the mailroom:

> All publications are subject to inspection by the MSCP and by unit staff. The MSCP has the authority to accept or reject a publication for content, subject to review by the DRC. The MSCP shall render decisions on publications reviewed ***within two weeks*** of receipt at the MSCP office. . . . Inmates do not have to be notified when magazines or books are being held for review. Publications shall not be rejected solely because the publication advocates the legitimate use of inmate grievance procedures, urges inmates to contact public representatives about prison conditions, or contains criticism of prison authorities.

(*id.* at 11-12 (emphasis added)).  The policy authorizes officials to reject a publication for certain content, including information that could facilitate an escape, materials on setting up or operating criminal schemes, or sexually explicit images (*id.* at 12). If publications are approved, they must be delivered to the inmate within three business days (*id.*).  The policy also sets out a procedure for inmates to appeal any decision denying delivery of an item (*id.* at 14-15).

Jones claims that the amended version of BP-03.91 impermissibly delays delivery of his copies of FCN because the policy authorizes a two-week delivery delay and because,

---

provides training for mailroom staff; conducts in-depth monitoring of all unit mailrooms; and submits periodic reports pertaining to the inmate mail system." *Id.* at 2.

[3]     The policy defines the DRC as "the body of appointed TDCJ administrators with the authority to hear all appeals related to rejected correspondence, publications, and placements on negative mailing lists." *Id*. at 2.

in practice, it causes delivery delays ranging from 4-9 weeks.[4]  He also claims that Lumpkin is liable for the delayed deliveries because he implements and enforces the amended policy (Dkt. 1, at 8).  In response to Jones' administrative grievance about the delayed deliveries, an official stated that, because FCN is not on TDCJ's approved publications list, the MSCP reviews each issue individually.  The official further stated that, after the panel renders a decision and notifies the unit's mailroom, approved issues are delivered to Jones (Dkt. 1-3, at 1-5).

Second, Jones sues Thomas, the mailroom supervisor at the Wynne Unit, for alleged improper handling of his mail.  He makes several complaints:

(1)    Thomas held his legal mail from May 26 through June 2, 2021, causing Jones to miss a Fifth Circuit filing deadline on June 2, 2021 (Dkt. 1, at 9-10);

(2)    Thomas held a letter from Jones' nephew "for weeks," causing a one-month delay from the postmark on May 28, 2021, to delivery to Jones on June 28, 2021 (*id.* at 10);

(3)    Thomas holds his outgoing mail "for days and sometimes weeks" before processing it (*id.*); and,

(4)    Thomas "vandalize[s]" his mail because, when the item is addressed to "Sam Jones" rather than "Samuel Jones" she "scratches out 'Sam' and writes 'Samuel,'" or "write[s] 'Samuel' in red ink above 'Sam'," or "add[s] the suffix 'uel' in red at the end of 'Sam'" (*id.*  at 10-11).

---

[4]      Jones states in some of his briefing that the delays were as long as 12 weeks (*see* Dkt. 1, at 3, 8).  However, the specific dates he provides allege a maximum delay of 9 weeks. *See* Dkt. 1, at 8-9 & Dkt. 1-3, at 59 (alleging that his issue from Dec. 8, 2020, was delivered on Jan. 7, 2021; that his issues from Nov. 12, Nov. 24, and Dec. 1, 2020, were delivered on Jan. 14, 2021; that his issues from Dec. 22, 2020, and Jan. 19, 2021, were delivered on Jan. 21, 2021; that his issues from Dec. 15, 2020, and Jan. 12, 2021 were delivered on Jan. 29, 2021; that his issues from Dec. 29, 2020, was delivered on Feb. 9, 2021; that his issue from Jan. 5, 2021 was delivered on Feb. 20, 2021; that his issue from Feb. 20, 2021, was delivered on March 11, 2021).

*See* Dkt. 4, at 11-14; *see* Dkt. 1-3, at 26 (envelope with "Samuel" handwritten above the typed name, "Sam Jones"); Dkt. 41 (declarations). Jones claims that Thomas' delays in processing his mail violate BP-03.91, which requires delivery of incoming mail within two or three business days (Dkt. 1, at 10).[5] He submits several grievances and other complaints he filed on the issue (Dkt. 1-3).

Third, Jones sues Officer Iwundi for a body cavity search that Jones claims was unconstitutional.[6] He alleges that, at the time Iwundi ordered the search, Jones was 30 feet from his cell block placing outgoing mail in a box (Dkt. 38, at 20-21). He claims that the search was unnecessary and that Iwundi conducted it "simply for his play and amusement" (Dkt. 1, at 11-12; Dkt. 4, at 14-17). He further claims that other inmates were present at the time and that Iwundi and the other inmates were laughing at him:

> Iwundi ordered me to submit to a strip search which I complied then he ordered me to turn around and "spread open my ass cheeks" which I complied and as I [was] complying he kept telling me to bend over further & further and as I [was] complying with his orders he stood laughing. His laughter made me realize that the cavity search was one of his childish pranks so I then raised up and turn[ed] around and snatched my boxer under[shorts] out of his hand as he stood there laughing with a big smile on his face then I noticed that there were several other inmates looking through the barber shop window and they were all laughing too[.]

---

[5]  The policy provides that "[a]ll incoming mail, except packages, shall be delivered within two business days of receipt" and that "[a]ll outgoing mail, except packages, shall be delivered to a USPS employee within two business days" (BP-03.91, at 13). It permits an additional day of processing for "inmates whose mail is being monitored." *See id*. (providing that items for inmates whose mail is monitored "may be processed within three business days of receipt, if necessary, to allow unit staff to properly examine the correspondence").

[6]  Although Jones states in his complaint that search occurred on April 23, 2020, his initial grievance about the incident, which is dated March 31, 2020, states that it occurred on March 23, 2020. *See* Dkt. 1-3, at 28-32.

(Dkt. 1, at 11-12) (emphasis deleted).[7]   Jones filed an administrative grievance against Iwundi, which officials denied based on their conclusions that Jones had been "out of place" at the time of the incident, that his "suspicious behavior" had prompted the search, and that Iwundi had not violated policy (Dkt. 1-3, at 28-32).   Jones maintains that his behavior was not suspicious, claiming that Iwundi did not accuse him of carrying contraband or find contraband during the cavity search (Dkt. 38, at 18).

Jones sues all three defendants in their individual and official capacities.   As relief for his claims, he seeks a declaration that his rights were violated; an injunction ordering the defendants to forward mail and publications to him within three days of receipt at the unit mailroom; an injunction ordering Thomas to stop writing "Samuel" over his "preferred name 'Sam'"; and an injunction for Iwundi to stop "playing with" Jones.   He additionally seeks compensatory, nominal, and punitive damages from each defendant (Dkt. 1, at 16).

The defendants seek dismissal of all claims against them.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."   *Smith v. Regional Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (cleaned up).   A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction.

---

[7]   Jones does not allege that Iwundi used force or touched him.

*Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013).  The court must take as true the complaint's well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012).

### B.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true.  *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).  Federal pleading rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)).  The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).  The pleadings also must claim that the plaintiff is entitled to relief under a valid legal theory.  *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).  Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief."  *Harrington*, 563 F.3d at 147 (cleaned up).

The court's review under Rule 12(b)(6) is limited to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are

central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (on a Rule 12(b)(6) motion, documents attached to the briefing may be considered by the court if the documents are sufficiently referenced in the complaint and no party questions their authenticity (citing 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004))). The Court may also rely on judicially noticed facts. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

### C.  *Pro Se* **Pleadings**

"Pleadings must be construed so as to do justice." FED. R. CIV. P. 8(e). In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.  <u>ANALYSIS</u>

Lumpkin, Thomas, and Iwundi seek dismissal of all claims against them under Rules 12(b)(1) and 12(b)(6). Jones brings claims against all three defendants under RLUIPA; claims against Lumpkin and Thomas under the First Amendment; and a claim

against Iwundi under the Fourth Amendment.

Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of BP-03.91, as amended in 2021, which is a matter of public record and not subject to reasonable dispute. The Court may rely on these judicially noticed facts without converting the motion to dismiss to a motion for summary judgment. *See Funk*, 631 F.3d at 783.

### A.    Sovereign Immunity

A claim against an official employed by TDCJ in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008).   Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).   Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394.

To the extent Jones sues the defendants in their official capacity as TDCJ employees, the defendants are entitled to immunity under the Eleventh Amendment from claims for monetary damages.  The defendants' motion to dismiss all official capacity claims for damages therefore will be granted.

### B.    Compensatory Damages

A civil rights plaintiff may not recover compensatory damages unless he shows a physical injury or the commission of a sexual act.  42 U.S.C. § 1997e(e).  Section 1997e(e) incorporates a definition of a "sexual act" that requires contact or touching.  *See* 18 U.S.C. § 2246(2).  The Fifth Circuit has held that § 1997e(e) bars recovery of compensatory damages even for claims under the First Amendment, *i.e.*, a claim not usually accompanied by physical injury. *Geiger*, 404 F.3d at 374-75.

Jones has not pleaded that he suffered a physical injury or was subject to a sexual act involving contact or touching.  Therefore, all of his claims for compensatory damages will be dismissed with prejudice.  This ruling does not pertain to Jones' claims for nominal or punitive damages.

### C.    RLUIPA

Jones brings claims against Lumpkin, Thomas, and Iwundi under RLUIPA. RLUIPA provides that a prison may not "impose a substantial burden on the religious exercise" of an inmate unless the government demonstrates that the imposed burden on that person (1) is "in furtherance of a compelling governmental interest" and (2) is the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a); *see McFaul v. Valenzuela*, 684 F.3d 564, 575 (5th Cir. 2012).

A RLUIPA plaintiff bears the initial burden to show that the challenged action is a "substantial burden" on his religious exercise.  *Brown v. Collier*, 929 F.3d 218, 229 (5th Cir. 2019).  A "substantial burden" is one that "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *McFaul*, 684 F.3d at 575-76 (cleaned up).  If the plaintiff carries his initial burden, the government can

show that its challenged action does not violate RLUIPA by demonstrating that the action furthers a "compelling government interest" and that the challenged action is the "least restrictive means" to further that interest. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011); *Mayfield*, 529 F.3d at 612. When adopting the "compelling government interest" standard, Congress anticipated that courts would defer to "the experience and expertise of prison and jail administrators." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (cleaned up). Thus, prison officials may implement policies that interfere with an inmate's religious practices if such policies are based on legitimate concerns about institutional order, safety, discipline, and security. *Id.*; *Chance v. Tex. Dep't of Crim. Justice*, 730 F.3d 404, 410 (5th Cir. 2013).

As a preliminary matter, Jones' claims for monetary damages against the defendants in their individual capacities must fail because RLUIPA only authorizes official capacity claims. *Sossaman*, 560 F.3d at 331; *see Mayfield*, 529 F.3d at 605 & n.7. Moreover, to the extent he seeks monetary damages against the defendants in their official capacities, sovereign immunity bars the claims for the reasons stated above. *See NiGen*, 804 F.3d at 394. Therefore, all of Jones' claims for monetary damages based on alleged RLUIPA violations will be dismissed. Jones may only pursue RLUIPA claims against the defendants in their official capacities and may only seek declaratory or injunctive relief. The Court now addresses each of the three defendants in turn.

## 1. Lumpkin

Jones claims that Lumpkin violated RLUIPA in connection with the delayed delivery of Jones' copies of FCN. Liberally construed, Jones' pleadings claim that BP-

03.91, as amended, (1) violates RLUIPA as written because it authorizes a two-week delivery delay for publications and does not require that the inmate be notified, and (2) violates RLUIPA as applied because it causes actual delays of 4-9 weeks in the delivery of Jones' copies of FCN (Dkt. 1, at 8; Dkt. 38, at 12-13).

The defendants argue that Jones' RLUIPA claim against Lumpkin must be dismissed because Jones does not adequately allege that Lumpkin was personally involved in the alleged violation. *See* Dkt. 35, at 5-7 (arguing that Lumpkin is not liable because he is not a member of the Texas Board of Criminal Justice, which promulgated BP-03.91). However, as stated above, Jones brings not only a facial challenge to the policy, but also an as-applied challenge, claiming that TDCJ's implementation of the policy causes extended delivery delays, that Lumpkin is responsible for implementing the policy,[8] and that the delays interfere with his religious exercise. Another court recently considering BP-03.91 noted that, in the context of implementation or enforcement of the policy, Lumpkin may be the proper defendant.[9]  On this record, taking all well-pleaded facts as true, the defendants' motion to dismiss Jones' RLUIPA claim against Lumpkin based on his level of involvement will be denied.

---

[8]    *See* Dkt. 1, at 8 (alleging that Lumpkin is responsible for "enacting, implementing, and enforcing" BP-03.91).

[9]    *Thompson v. Lumpkin*, No. 2:21-CV-00154, 2022 WL 4110926, at *5 (S.D. Tex. July 6, 2022), report and recommendation adopted, 2022 WL 4110160 (S.D. Tex. Sept. 7, 2022) (holding that, under *Haverkamp v. Linthicum*, 6 F.4th 662, 670 (5th Cir. 2021), Lumpkin may be amenable to suit regarding BP-03.91 because he "may bear some responsibility with regard to enforcing [BP-03.91] and/or having a willingness or capability to exercise that duty" and may be capable of providing injunctive relief).

On the merits of Jones' claim against Lumpkin, the defendants argue that Jones failed to plead any facts that could show a substantial burden on his religious exercise. In response, Jones alleges that his delayed receipt of FCN causes him to miss communal observances with other members of the Nation of Islam:

> The defendants are placing a substantial burden on Jones' religious exercise by holding each issue of his incoming FCN for 4 to 12 weeks[.]  [S]uch long delay results in Jones not being able to participate in certain functions with the greater [Nation of Islam] community such as fasting with the community when instructed to do so by Minister Farrakhan because by the time that the defendants release Jones' FCN such community fast would have already taken place weeks prior to Jones finally receiving the paper with such instructions in it[.]

(Dkt. 38, at 16).

Regarding Jones' challenge to BP-03.91 as written, his filings do not identify any substantial burden placed on him by the policy's authorized two-week delivery delay or by its notification provision. He therefore fails to state a claim upon which relief can be granted under RLUIPA, and his facial challenge to the policy will be dismissed.

However, Jones also claims that Lumpkin violated his rights under RLUIPA because, as applied, BP-03.91 results in an extended delay in his receipt of FCN, in excess of the authorized two-week delay.  *See* Dkt. 38, at 13, 16; Dkt. 1, at 8-9.  The defendants do not address Jones' claim regarding the unauthorized 4-9 week delivery delay and its burden on his religious observances.  On this record, therefore, the defendants have not shown that Jones' RLUIPA claim regarding the unauthorized delay fails as a matter of law. Their motion to dismiss this portion of Jones' claim will be denied.  *See Neal v. Lucas*, 75 F. App'x 960, 961 (5th Cir. 2003) (remanding case because the district court had not

considered whether the prison regulation, as applied to the publications sought by the plaintiff, had violated the plaintiff's rights).

### 2. Thomas

Jones claims that Thomas vandalized his mail or held it longer than BP-03.91 allows. These allegations do not state a claim against RLUIPA because, as pleaded, they do not pertain to Jones' religious exercise. *See Brown*, 929 F.3d at 229; *Harrington*, 563 F.3d at 147. Moreover, his claims against Thomas do not challenge TDCJ policy, but instead are brought against her in her individual capacity. *See* Dkt. 1, at 9-11 (alleging that Thomas' actions were "childish" and violated BP-03.91). His claims are subject to dismissal on this additional basis. *See Sossamon*, 560 F.3d at 331 ("RLUIPA does not create a cause of action against defendants in their individual capacities").

### 3. Iwundi

Jones claims that Iwundi's body cavity search violated RLUIPA because it violated his religious beliefs as a Muslim, in particular, restrictions on nudity (Dkt. 28, at 22-23; Dkt. 4, at 17). He does not argue that a TDCJ policy caused Iwundi to violate Jones' rights, but instead claims that Iwundi, in his individual capacity, conducted an unjustified search. *See* Dkt. 1, at 11 (alleging that Iwundi "plays childish games with inmates such as but not limited to 'name calling,' 'grab ass,', e[tc.]"). Because the statute does not authorize claims against defendants in their individual capacities, s*ee Sossamon*, 560 F.3d at 331, his RLUIPA claim against Iwundi must be dismissed.

### 4.   Conclusion regarding RLUIPA claims

For the reasons stated above, the Defendants' motion to dismiss Jones' RLUIPA claims will be granted as to Jones' claims for monetary damages, his claims against Lumpkin in his individual capacity, his claims against Thomas and Iwundi, and his facial challenge to BP-03.91.  The motion will be denied as to Jones's claim against Lumpkin in his official capacity that BP-03.91, as applied, violates RLUIPA because it causes 4-9 week delays in the delivery of his religious publication.

### C.   Constitutional Claims

Jones' constitutional claims are cognizable under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation.  *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016).  He brings a First Amendment claim against Lumpkin and Thomas; he brings a Fourth Amendment claim against Iwundi.

### 1.   First Amendment

### a.   Lumpkin

Jones' First Amendment claim against Lumpkin is based on the same facts as his RLUIPA claim, *i.e.*, that BP-03.91 authorizes a two-week delay in the delivery of Jones' copies of FCN and, as applied, actually causes delivery delays of 4-9 weeks.[10]

A prisoner "retains those First Amendment rights that are not inconsistent with his

---

[10]   The defendants seek dismissal of Jones' claim against Lumpkin because Lumpkin did not promulgate BP-03.91.  For the reasons stated above when discussing Jones' RLUIPA claims, the defendants' motion to dismiss on this basis is denied.

status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  An inmate's First Amendment right to exercise his religion "is subject to reasonable restrictions and limitations necessitated by penological goals." *McFaul,* 684 F.3d at 571-572 (cleaned up).  If a restriction impinging on the inmate's First Amendment rights is "reasonably related to legitimate penological interests," it must be upheld.  *Id*. (cleaned up).  An inmate bears the burden to prove "that a prison policy, as applied, is not reasonably related to legitimate penological objectives." *DeMarco v. Bynum*, 50 F.4th 479, 482 (5th Cir. 2022) (cleaned up), *cert. denied,* No. 22-6455, 2023 WL 2357355 (U.S. Mar. 6, 2023)    Prison officials "are entitled to substantial deference in the exercise of their professional judgment."  *Id.* (cleaned up).

The Supreme Court has upheld the constitutionality of regulations like BP-03.91 that permit prison officials to review publications sent to inmates.  *Thornburgh v. Abbott*, 490 U.S. 401, 403 (1989). Courts reviewing prison regulations rely on four *Turner* factors, *see Turner v. Safley*, 482 U.S. 78 (1987), to determine whether the regulation is reasonably related to legitimate penological interests:

> (1) whether there is a "valid, rational connection" between the regulation and the government interest; (2) whether there are alternative means of exercising the rights that remain open to prisoners; (3) the impact that accommodation of the asserted constitutional rights would have on other prisoners, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate a prisoner's rights at de minimis cost to valid penological interests.

*DeMarco*, 50 F.4th at 482 (citing *Turner*, 482 U.S. at 89-91)).

Jones first brings a facial challenge to BP-03.91, arguing that it violates his First Amendment rights because it permits officials to hold his copies of FCN for two weeks

without notifying him of the hold (Dkt. 38, at 12).[11]   However, as noted above in the RLUIPA context, he does not identify any infringement on his religious exercise based on the policy provisions as written.  Moreover, the Fifth Circuit has previously held that prison officials may, consistent with the First Amendment, review publications before delivery to inmates and limit access to items that are detrimental to institutional security.  *See Prison Legal News v. Livingston*, 683 F.3d 201, 215 (5th Cir. 2012) (stating that past version of TDCJ's mail regulations was "undoubtedly facially constitutional" under controlling legal precedent); *Thompson v. Patteson,* 985 F.2d 202, 206 (5th Cir. 1993) (rejecting a First Amendment challenge to prior Texas procedures for reviewing and limiting access to certain content in inmates' mail or publications); *Guajardo v. Estelle*, 580 F.2d 748, 762 (5th Cir. 1978) (holding that, in order to avoid censorship based on "the whims of [prison] administrators," Texas prison officials were required to review publications "and make a "specific, factual determination that the publication is detrimental to prisoner rehabilitation" before refusing delivery to the inmate).  *See also Thompson*, 2022 WL 4110926, at *5-*8 (rejecting facial challenge to the amended version of BP-03.91).  Jones' facial challenge to BP-03.91 is foreclosed by this precedent.  Viewing all facts in the light most favorable to Jones, the defendants' motion to dismiss will be granted as to Jones' First Amendment challenge to the policy as written.[12]

---

[11]      *See* BP-03.91, at 11-12 (providing for inspection of publications within two weeks of receipt at the mailroom and for delivery of approved publications to the inmate within three business days).

[12]      Jones also challenges the defendants' position that the FCN must be reviewed because it is not on the approved publications list (Dkt. 38, at 14-15).  He argues that FCN had been approved

Jones also brings a First Amendment challenge to BP-03.91 as applied to him.  He claims that, in practice, TDCJ officials are holding his copies of FCN for 4-9 weeks, in excess of the policy's authorized two-week delay (Dkt. 38, at 13).  The defendants point to Fifth Circuit authority holding that a policy violation, without more, does not suffice to show a constitutional violation.  *See Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir 1996).  However, Jones argues that the delay of 4-9 weeks is, in itself, a First Amendment violation, and causes him to miss religious observances announced in FCN (Dkt. 1, at 8-9; Dkt. 38, at 16).

As with the RLUIPA claim, the defendants' motion does not address Jones' claim that the 4-9 week delay violates his rights.  Although the motion argues that Jones does not explain how the screening process or the delayed receipt prevents his religious exercise, Jones' response argues that this delay prevents him from participating in communal religious observances on dates that have passed before he receives the instructions (Dkt. 38, at 16).  Also, although the motion argues that relevant legal authorities do not require that an inmate receive all materials he wishes to receive, or that he receive them immediately, that argument does not adequately address Jones' claim regarding regularly

---

for four decades but that officials began to hold FCN in 2019, after the Fifth Circuit terminated a 1977 consent decree.  *See Brown*, 929 F.3d at 254 (terminating 1977 consent decree).  To the extent Jones seeks to challenge the Fifth Circuit's 2019 *Brown* holding, he raises no meritorious grounds to do so.  To the extent Jones challenges officials' decision to remove FCN from the approved publications list, he does not show that the policy is not reasonably related to legitimate penological objectives and, moreover, provides no basis to depart from the "substantial deference" courts afford to prison officials in the exercise of their professional judgment.  *See DeMarco*, 50 F. 4th at 482; *Prison Legal News*, 683 F.3d at 215.

delayed delivery of his copies of FCN. The defendants have not argued that TDCJ has a legitimate penological objective justifying a nine-week delay.

On this record, the defendants have not shown that Jones' First Amendment claim regarding a 4-9 week delay fails as a matter of law. Their motion to dismiss this portion of Jones' claim therefore will be denied. *See Neal*, 75 F. App'x at 961.

### b.   Thomas

Jones' claim against Thomas does not pertain to FCN or his right to exercise his religion. Rather, Jones claims that Thomas violated his First Amendment rights when she vandalized and improperly held his general correspondence and his legal mail.

Jones' claim regarding his non-legal mail is analyzed under *Turner*'s "legitimate penological interest" standard. *Prison Legal News*, 683 F.3d at 215; *Brewer v. Wilkinson*, 3 F.3d 816, 824-25 (5th Cir. 1993). He complains that, for over a year at the time of his briefing, Thomas had been "childishly hold[ing] [his] incoming legal and regular mail for days and sometimes weeks" before delivering it to Jones (Dkt. 38, at 9; *see* Dkt. 39, at 10-11). He also complains that Thomas will not deliver mail addressed to "Sam Jones" instead of "Samuel Jones" and that she sometimes writes "uel" on the envelope, which Jones characterizes as "vandalism" (Dkt. 38, at 11). However, an allegation that a prisoner's mail was delayed, without more, is insufficient to show a violation of the First Amendment. *See Pinson v. U.S. Dep't of Just.*, No. CV 12-1872 (RC), 2015 WL 13673660, at *3 (D.D.C. July 28, 2015); *LaVergne v. McDonald*, 2020 WL 7090064, at *6 n. 62 (M.D. La. Nov. 23, 2020), *report and recommendation adopted,* 2020 WL 7081598 (M.D. La. Dec. 3, 2020). Moreover, as the Supreme Court has stated, "freedom from censorship is not equivalent to

freedom from inspection or perusal." *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).  In this case, taking as true all of Jones' allegations regarding delay and alteration of his mail, Jones fails to plead facts that could show that Thomas' alleged actions were not reasonably related to legitimate penological objectives.  *See*, *e.g.*, *Prison Legal News*, 683 F.3d at 214-15.  His allegations therefore do not rise to the level of a constitutional claim.

Jones also brings a claim regarding his legal mail, which implicates his First Amendment right to access the courts.  *See Lewis v. Casey*, 518 U.S. 343 (1996); *Wells v. Thaler*, 460 F. App'x 303, 308 (5th Cir. 2012).  To succeed on an access-to-courts claim, a plaintiff must show that the defendants caused an "actual injury" by frustrating or impeding the plaintiff's nonfrivolous legal claim.  *Lewis*, 518 U.S. at 352; *see Wells*, 460 F. App'x at 308. Here, Jones alleges that Thomas interfered with his access to courts because, when she delayed his legal mail by one week, she caused him to miss a Fifth Circuit deadline on June 2, 2021 (Dkt. 38, at 9-10).  He refers to *Jones v. Lumpkin*, Appeal No. 21-20106, which was pending at the time.  *See* Dkt. 1-3, at 42.  However, Jones does not allege any actual injury.[13]  His access to courts claim against Thomas therefore will be dismissed.

The defendants' motion to dismiss Jones' First Amendment claims against Thomas will be granted.

---

[13]     Moreover, the Fifth Circuit's records for Appeal No. 21-20106, of which the Court takes judicial notice, reflect no injury to Jones.  Rather, the records show that, after Jones missed the deadline to file documentation supporting his request to proceed *in forma pauperis*, the appellate court granted his request for an extension or time, and Jones then timely filed his documentation on June 14, 2021.

### 2.     Fourth Amendment

Jones claims that Officer Iwundi violated his rights under the Fourth Amendment when Iwundi ordered him to submit to an invasive cavity search.  He alleges that Iwundi's order was unjustified and that Iwundi conducted the search for his own amusement.

To comport with Fourth Amendment standards, a search conducted on a prisoner "must be reasonable under all the facts and circumstances in which [it is] performed." *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017) (cleaned up); *see Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994).  "Under appropriate circumstances, visual body cavity searches of prisoners can be constitutionally reasonable." *Id.* (citing *Bell*, 441 U.S. at 558.  Given the judicial deference owed to officials' decision in the prison context, prison officials' burden to show reasonableness is "light."   *Id.* However, inmates may legitimately bring claims "not to be searched in a humiliating and degrading manner." *McCreary v. Richardson*, 738 F.3d 651, 657 (5th Cir. 2013) (cleaned up), *as revised* (Oct. 9, 2013).  When reviewing the reasonableness of a strip search, courts look to the objective reasonableness of the search rather than to the official's subjective intent. *Id.*  "'Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted'." *Elliott*, 38 F.3d at 191 (citing *Bell*, 441 U.S. at 559); *see Parker v. Woods*, 834 F. App'x 92, 95-96 (5th Cir. 2020) (the Fifth Circuit has considered "factors such as whether the search was performed by guards of the opposite sex; whether it occurred in public or private; and whether it was unreasonably lengthy") (cleaned up).

The defendants argue that Jones' claim under the Fourth Amendment fails as a matter of law because Iwundi had a the "valid penological purpose" for the search (Dkt. 35, at 12). They rely on the official response to Jones' grievance regarding the incident, which states that Jones was out of place on the unit and behaving suspiciously (Dkt. 1-3, at 32). However, Jones states in his briefing, which he declares under penalty of perjury to contain facts that are true and correct, that he did not behave suspiciously when he walked 30 feet from his cell block to place outgoing mail in a box (Dkt. 38, at 20). He also alleges that, even assuming Iwundi had suspicions about his behavior, the search was unjustified because Iwundi was playing a prank on him and sought to humiliate him in front of other inmates (*id*. at 18-21 (claiming that Iwundi did not accuse Jones of carrying contraband or find contraband during the search, but rather conducted an unjustified search "for his sport, play and amusement" and to humiliate Jones "in front of those other inmates who[] were looking through the barber shop window laughing"). At this stage of the litigation, the Court must take all well-pleaded facts as true. Jones has alleged that Iwundi's search was not objectively reasonable under all of the facts and circumstances at the time. *See Lewis*, 870 F.3d at 368; *McCreary*, 738 F.3d at 657; *Elliott*, 38 F.3d at 191; *Parker*, 834 F. App'x at 95-96. The defendants have not demonstrated that Jones' Fourth Amendment claim fails as a matter of law.[14]

---

[14]     Jones also claims that the body cavity search violated the Eighth Amendment. This claim will be dismissed with prejudice because a claim regarding a prison search is governed by the Fourth Amendment, not the Eighth Amendment. *See Parker*, 834 F. App'x at 94-95. The Court does not address the defendants' argument that Jones' Eighth Amendment claim should be dismissed as frivolous and retaliatory based on Jones' statements in his Step 2 grievance. *See* Dkt. 35, at 12-13. Additionally, because several claims in this lawsuit remain pending, the Court denies

The Court next addresses Iwundi's asserted defense of qualified immunity. Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (cleaned up). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (cleaned up). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (cleaned up). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead specific facts that "defeat a qualified immunity defense" with the "minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).

Here, although the defendants make a general argument that Jones cannot overcome qualified immunity, they do not specifically analyze immunity for Jones' Fourth Amendment claim against Iwundi (Dkt. 35, at 14-16). Iwundi therefore apparently relies

---

the defendants' request to assign Jones a strike under 28 U.S.C. § 1915(g). *See Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 (5th Cir. 2021).

on the official response to Jones' grievance which, as noted above, concluded that Jones' behavior was suspicious, that he was out of place on the unit, and that Iwundi had not violated policy.  However, as stated above, Jones has pleaded facts contesting whether the search was objectively reasonable under the circumstances, which the Court must take as true at this stage.  *See Lewis*, 870 F.3d at 368; *Carroll*, 800 F.3d at 169.  Additionally, the defendants have not addressed Jones' allegations that Iwundi conducted the search so as to mock and humiliate him in front of others.  At this stage of the case, taking all of Jones' pleaded facts as true, he has plausibly alleged that Iwundi violated the Fourth Amendment and that his conduct was not objectively reasonable in light of clearly established law.  Therefore, on the current record, Iwundi has not demonstrated that he is entitled to dismissal on qualified immunity grounds.

### D.    Other Pending Matters

Jones filed a motion to alter or amend the Court's order dated August 25, 2022, which granted in part Jones' motion for reconsideration and withdrew prior rulings on Jones' property claims against Doe, Rowe-Phillips, and Gitau.[15]   Contrary to Jones' statements in his motion, the Court construed his property claims as arising under the Due Process Clause.  Jones otherwise states no valid basis for relief.  Therefore, under Federal Rule of Civil Procedure 54(b), the Court in its discretion will deny Jones' motion (Dkt. 33) to revise its prior order.

---

[15]     Jones seeks relief under Federal Rule of Civil Procedure 59(e).  However, Rule 59(e) does not apply because no judgment has been entered in this case.  The Court therefore construes his request as arising under Rule 54(b).

Jones also filed two motions to amend his pleadings (Dkt. 34; Dkt. 36) and a proposed third amended complaint (Dkt. 25). Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). When considering whether to grant leave to amend, a district court "should consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466-67 (5th Cir. 2012) (cleaned up).

Jones' first motion (Dkt. 34) seeks leave to amend his complaint to name Margaret Mubuge as the defendant previously identified as Jane Doe, against whom Jones brings a property claim. The Court in its discretion will grant Jones' motion for leave to amend for this purpose. The Clerk is instructed to replace "Jane Doe" on the docket with "Margaret Mubuge."

Jones' second motion (Dkt. 36) seeks to add O'Daniel as a defendant on the grounds that O'Daniel is chair of the Texas Board of Criminal Justice, the body that promulgated BP-03.91. However, as explained above, Jones has failed to state a valid facial challenge to the policy, and his only remaining claim regarding BP-03.91 pertains to the 4-9 week delivery delay. Because Jones does not allege that O'Daniel is responsible for the 4-9 week delivery delay, his potential claim against O'Daniel would fail based on the rulings above. His motion to amend therefore will be denied as futile. *See Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

Finally, Jones' third amended complaint (Dkt. 25), which concerns disciplinary action regarding Jones' religious beard, will be stricken from the record.  Jones did not seek the Court's leave to file this amendment, as instructed in the Court's order dated November 10, 2021 (Dkt. 8, at 2).  Even assuming Jones had properly sought leave, the Court in its discretion would deny leave to file the amendment under Federal Rule of Civil Procedure 15(d) because the claims, which pertain to events after Jones filed this lawsuit, involve different defendants and issues than his original claims.  *See Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 202 (5th Cir. 2012); *Burns v. Exxon*, 158 F.3d 336, 343 (5th Cir. 1998); *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983); *Lowrey v. Beach*, 708 F. App'x 194, 195 (5th Cir. 2018).   Moreover, as the Court explained in its order dated July 22, 2022, an attempt to file multiple lawsuits in one complaint violates Federal Rules of Civil Procedure 18 and 20 and has been discouraged by the Fifth Circuit (Dkt. 20, at 9-10; *see Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998)).  If Jones chooses to pursue the claims in his proposed amendment, he may file a separate lawsuit.

## IV.   <u>CONCLUSION</u>

For the reasons stated above the Court now **ORDERS** as follows:

1.   The defendants' motion to dismiss (Dkt. 35) is **GRANTED in part** and **DENIED in part**.  In particular:

a.   The defendants' motion to dismiss Jones' claims for monetary damages against all defendants in their official capacities based on sovereign immunity is **GRANTED**.

b.     All of Jones' claims for compensatory damages are **DISMISSED with prejudice** under 42 U.S.C. § 1997e(e).

c.     The defendants' motion to dismiss Jones' claims under RLUIPA is **GRANTED in part** and **DENIED in part**.  The motion is **DENIED** as to Jones's claim against Lumpkin in his official capacity that BP-03.91, as applied, violates RLUIPA because it causes 4-9 week delays in the delivery of his religious publication.  In all other respects, Jones' RLUIPA claims are **DISMISSED with prejudice**.

d.     The defendants' motion to dismiss Jones' First Amendment claims against Lumpkin is **GRANTED in part** as to the facial policy challenge and **DENIED in part** as to the 4-9 week delay in delivery.

e.     The defendants' motion to dismiss Jones' claims against Thomas is **GRANTED.**  All of Jones' claims against Thomas are **DISMISSED with prejudice**.

f.     The defendants' motion to dismiss Jones' Fourth Amendment claims against Iwundi is **DENIED**.

g.     The defendants' motion to dismiss Jones' Fourth Amendment claims based on qualified immunity is **DENIED**.

h.     The defendants' motion to dismiss Jones' Eighth Amendment claims is **GRANTED.**

2.     Jones' motion to alter or amend the Court's prior order (Dkt. 33) is **DENIED**.

3.     Jones' motion to amend his pleadings to substitute Margaret Mubuge for Jane Doe (Dkt. 34) is **GRANTED**.  The Clerk is **INSTRUCTED** to replace "Jane Doe" on the docket with "Margaret Mubuge."

4.     Jones' motion to amend his pleadings to name O'Daniel as a defendant (Dkt. 36) is **DENIED** as futile.

5.     Jones' third amended complaint (Dkt. 25) is **STRICKEN** from the record.

6.     Lumpkin and Iwundi must file an answer to the remaining claims against them within **30 days** of the date of this order.  All other scheduling instructions in the Court's order to answer dated July 26, 2022, including the deadline for dispositive motions, remain in effect.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on _____ June 29 _____, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE